STATE OF NEBRASKA, DEPARTMENT OF PUBLIC WELFARE, APPELLEE, V. GLADYS L. SAVILLE ET AL., APPELLEES, LISA M. OLDFIELD, LILLIAN E. MULLINEX, CAROLYN PENNEY, AND COMMISSIONER OF LABOR, STATE OF NEBRASKA, DEPARTMENT OF LABOR, APPELLANTS.

361 N.W.2d 215

Filed January 11, 1985.   No. 84-340.

Noel S. DeKalb, for appellants Oldfield and Mullinex.

Diane B. Metz, for appellant Penney.

Pamela A. Mattson, for appellant Commissioner of Labor.

Paul L. Douglas, Attorney General, and Royce N. Harper, for appellee Department of Public Welfare.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This appeal involves the question of whether persons retained by the former Nebraska Department of Public Welfare (Welfare), now the Department of Social Services, pursuant to a service provider program administered by Welfare in accordance with 42 U.S.C. § 1397 (1982), are "employees" within the meaning of Neb. Rev. Stat. § 48-604 (Reissue 1984). If the individuals are employees, Welfare is required to make contributions for unemployment insurance benefits on behalf of them. If they are independent contractors, however, they are exempt from the coverage of the Employment Security Law, Neb. Rev. Stat. §§ 48-601 et seq. (Reissue 1984). The district court found the individuals to be independent contractors, and the state Department of Labor (Labor) and various individual claimants appeal. For reasons more specifically set out hereinafter, we believe the district court's determination is correct.

However, before proceeding to address the specific issue, there are two preliminary questions which must be addressed. The first question is whether the district court for Lancaster County had jurisdiction to hear these appeals. The dispute arose when Labor informed Welfare that individuals working as service providers were performing services considered to be covered employment, thereby requiring Welfare to make contributions on behalf of such "employees." While initially there were 33 such decisions rendered by Labor, the matters were ultimately consolidated into two groups for the purpose of hearing before the Nebraska Appeal Tribunal.

In two decisions mailed July 21, 1982, the Nebraska Appeal Tribunal affirmed the determinations made by Labor. Welfare then appealed each of the 33 cases in 16 judicial districts, including the district court for Lancaster County, Nebraska.

After the time for appeal had expired, Welfare filed motions for change of venue in each court other than the district court for Lancaster County, Nebraska, and all cases were transferred to the district court for Lancaster County. All of the cases involved issues of contribution and not of benefits. Therefore, our decision in *Whitehouse Energy Savers v. Hanlon*, 214 Neb. 572, 334 N.W.2d 802 (1983), which held that appeals involving issues of contribution must be brought in the district court for Lancaster County controls, and we are compelled to dismiss all of the cases other than the Lisa M. Oldfield case, which was filed initially in the district court for Lancaster County, Nebraska. See, also, *Northern Messenger v. Sorensen*, 218 Neb. 846, 359 N.W.2d 787 (1984). Labor argues that the *Whitehouse Energy Savers* decision should not apply in the instant case because the transfers in these cases were made prior to our decision in *Whitehouse*. However, a reading of *Whitehouse* discloses that we did not declare any new rule of law, but only recited what was already the law. In dismissing the case in *Whitehouse, supra* at 576, 334 N.W.2d at 805, we said:

> The right of appeal is statutory and the requirements of the statute are mandatory and must be complied with before the appellate court acquires jurisdiction of the subject matter of the action. *Bd. of Ed. of Keya Paha County v. State Board of Education*, 212 Neb. 448, 323 N.W.2d 89 (1982). The plaintiff, in the first instance, failed to comply with the provisions of § 48-650, as it was required to do.

Whether the transfers in the instant cases were made before or after our decision in *Whitehouse* is of no moment. The statutes which prescribe jurisdiction in benefit cases and jurisdiction in contribution cases existed before our decision in *Whitehouse*. All the cases filed herein, except that involving Lisa Oldfield, are therefore dismissed for want of jurisdiction.

A second issue which is presented to us is whether an amendment to § 48-604, which became effective after the hearing in Oldfield was conducted but before the decision was rendered, should be applied. The amendment was apparently enacted by the Legislature in response to our earlier decision in *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333

N.W.2d 646 (1983), wherein we held that the test set out in § 48-604(5) was merely a codification of the common-law rules applicable in determining the employer-employee relationship. The amendment provides as follows: "The provisions of this subdivision [§ 48-604(5)] are not intended to be a codification of the common law and shall be considered complete as written."

Labor urges us to apply the amendment to this case and decide the issue solely on the basis of the "ABC test." Welfare, on the other hand, argues that the amendment does not apply and that we should utilize the common-law standards set out in *Erspamer*. We believe that even limiting our examination to the narrower so-called ABC test set out in § 48-604(5), as urged by Labor, the determination of the district court was correct. For that reason we need not address the specific question regarding the applicability of the amendment to this appeal, and examine the record in light of the ABC test.

The record discloses that Oldfield was a provider of services pursuant to the service provider program administered by Welfare in accordance with § 1397. As a general rule, there are two categories of service providers: (1) those who provide services in a welfare client's home, such as housekeeping, child care, yard work, and repair work; and (2) those who provide services outside a welfare client's home, such as transportation and escort services. Lisa Oldfield provided in-home services for the welfare recipients to whom she was assigned.

In obtaining service providers neither the State Merit System nor the State Personnel System is utilized. In seeking work, prospective service providers may contact either Welfare or its agents. Additionally, Welfare clients may refer prospective providers to Welfare. Further, want ads may be utilized or volunteer bureaus may refer providers to Welfare. Each service provider is required to enter into a provider agreement before becoming eligible to provide services. This agreement, entered into by the provider and Welfare, is printed on forms furnished by Welfare and recites that the provider is self-employed or, in the alternative, an employee of the individual client for whom services are performed. Once a provider has been approved by Welfare, the provider becomes eligible to be assigned to a

welfare recipient if both the welfare recipient and the provider approve such assignment. Providers are compensated in accordance with limits established by Welfare.

It is clear that Welfare is not in the business of cleaning houses, cutting yards, or transporting persons to doctors or stores. Welfare is in the business of distributing funds, part of which come from the federal government and part of which are matching funds provided by the state, in order to permit welfare recipients to obtain needed services for which they could not otherwise pay. There are federal and state guidelines which govern the maximum compensation and hours available to any one provider for services performed for any one welfare recipient, regardless of the number of actual hours which may be required to perform the tasks. The record discloses that if a provider takes more time to provide the services than that authorized for payment by Welfare, no additional compensation may be received. The service provider is responsible for keeping track of the provider's own hours and submitting billings to Welfare, on forms supplied by Welfare, within 90 days of the providing of the services. The payments for services made by Welfare are without deductions except for FICA taxes. Additionally, providers are not entitled to any other state employee benefits, such as payment for holidays, sick leave, or vacation. A provider who fails to file a claim for payment as required is not entitled to payment for the services rendered.

When a service provider is requested by a welfare recipient, a caseworker-manager from the county welfare office conducts an investigation into the recipient's need for a service provider. Based upon that investigation, the county welfare office determines what the needs of the recipient are and authorizes the maximum services to be provided by the service provider. The county welfare office also attempts to match a service provider with an eligible recipient based upon the recipient's needs and the provider's experience. Once a match is found, the provider and the caseworker meet at the recipient's home to discuss the services to be provided. If all parties are agreeable, a provision of services begins. However, if the service provider is not acceptable to the recipient, another provider is sought by

the county welfare office.

All equipment and supplies are furnished by either the provider or the recipient, including, in the case of out-of-home services, the means of transportation. The provider agreement is terminable at the will of either party without future obligation, though, of course, Welfare has a duty to pay for services provided to date. Each provider is prohibited from subcontracting the services which the provider has agreed to perform, and Welfare has the right to determine what services are to be provided to the recipient. Each provider, however, is free to perform services for any other entity the provider may wish as long as the other work does not conflict with the delivery of services to the individual welfare recipient.

A local social service agency makes home visits to assess the provision of the services to the recipients. If it is determined that a recipient's needs have changed prior to the expiration of the authorization, the local service agency will notify the provider of the change in services. At this point the provider may determine whether he or she wishes to continue performing the services or wishes to terminate the relationship. Furthermore, a provider may refuse to provide services for a particular recipient if the provider chooses not to do so. While it is the responsibility of Welfare or the county welfare office to give the service provider instructions regarding the services to be provided to any welfare recipient, the supervision of the day-to-day performance of those services is largely conducted by the welfare recipient, who must determine whether he or she is satisfied with the services being provided. The recipient may determine whether he or she wishes a particular service provider to continue performing services in the recipient's home.

As we have indicated, we believe that applying only the ABC test to the facts of this case results in the inescapable conclusion that this individual is an independent contractor and exempt from the provisions of § 48-604. Part A of the ABC test requires that "such individual has been and will continue to be free from control or direction over the performance of such services, both under his or her contract of service and in fact." While under part A it may often be difficult to determine where the specific line regarding control falls, it appears to us that the

evidence in the Oldfield case is clear that the provider was free from control or direction by Welfare. Once the individual has been assigned to a particular recipient, Welfare exerts no further control by supervising how the services are performed. The provider is at liberty to provide the services at such time and in such manner as the provider may determine, subject only to objection by the recipient. Welfare does not require the provider to perform the services at a particular time or in a particular manner. The fact that Welfare may insist, as a condition of payment, that services be performed and that they be performed in a workmanlike manner, does not provide control as that term is understood within employment security laws. The evidence in this case satisfies part A.

Part B requires that "such service is either outside the usual course of the business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed." As we have already noted, Welfare is not in the business of providing such services but is, rather, in the business of paying for the services pursuant to welfare programs. This is no different than the situation where Welfare pays a doctor for medical services for a welfare recipient or pays a licensed taxi to periodically transport a recipient from home to doctor. Welfare makes no profit by reason of having these services performed outside of its "places of business," and, therefore, the requirements of part B are likewise met.

And, finally, part C provides that "such individual is customarily engaged in an independently established trade, occupation, profession, or business." Oldfield may work exclusively for welfare recipients or may work in part for welfare recipients and in part for others. But with the simple restriction that Oldfield may not subcontract the work, there are no other restrictions as to how many "employers" she may have. Moreover, we are impressed by the fact that Welfare provides nothing to this individual, either by way of equipment or benefits, except the payment for services billed to Welfare, much in the same way as Welfare pays all other vendors of goods and services. It is argued to us that domestic help cannot be an independent trade. We know of no rule of law to that

effect and have recently held to the contrary. See *Gregg v. Challburg*, 217 Neb. 143, 347 N.W.2d 559 (1984). Nor do we find any distinction between providers based upon the service they perform on a given day. Shall they be considered to be employees of Welfare when cleaning in the house, but not employees of Welfare when cutting the lawn or removing snow, solely on the basis that housecleaning is not generally considered to be an independent occupation while lawn cutting and snow removal are? We believe that we must examine the entire nature of the program. Part C is met. Therefore, even limiting our examination to the ABC test, we can reach no other conclusion than that reached by the district court. Oldfield was an independent contractor and not an employee of Welfare. For that reason the determination made by the district court, as it applied to Lisa Oldfield, was correct.

AFFIRMED IN PART, AND IN PART REVERSED
WITH DIRECTIONS TO DISMISS.