COMMISSIONER OF LABOR, STATE OF NEBRASKA, APPELLEE, V.
LYRIC COMPANY, INC., APPELLANT.
397 N.W.2d 32

Filed December 5, 1986.    No. 85-960.

Lisa C. Lewis of Byrne, Rothery, Lewis, Bedel & Tubach, for appellant.

Jerry D. Slominski, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from the Lancaster County District Court. The appellant, Lyric Company, Inc., was assessed unemployment taxes from September 1, 1983, through June 30, 1984. The unemployment insurance tax administrator found that Lyric did not meet the requirements for exemption from the payment of taxes set out under Neb. Rev. Stat. § 48-604(5) (Reissue 1984). Lyric appealed to the Nebraska Appeal Tribunal, which reversed the finding of the Department of Labor, holding that Lyric did meet the requirement for exemption from the payment of unemployment taxes. The Department of Labor appealed the decision of the Nebraska Appeal Tribunal to the Lancaster County District Court, which reversed the decision of the appeal tribunal and reinstated the decision of the Department of Labor. Lyric now appeals the decision of the Lancaster County District Court.

Lyric Company, Inc., is a wholesale costume jewelry and ladies' accessory business located in Omaha. Lyric has a local showroom and does some local business, but most of its business is done outstate as well as out of state by salespeople. The territories are fixed by Lyric for its sales staff and consist of a 300-mile area distant from the salesperson's focal point. The salespeople are hired in response to newspaper ads and are usually experienced, although they seldom have experience in the sale of jewelry. Lyric provides each salesperson with a set of samples, which remains the property of the company, and a list of customers in his or her territory. Lyric will, at the request of the salesperson, contact potential customers initially. Subsequent to the first season, the salesperson will be responsible for contacting customers and making appointments. No training or instruction is provided by Lyric.

Lyric does not require that its salespeople sell only its products. Salespeople may, and do, sell other products. Lyric places no limits upon the type of product which may be sold, and would permit its salespeople to sell jewelry or other ladies' accessories. The salespeople work out of their homes, and work on a straight commission basis. Limited amounts will be advanced on their commissions throughout the season. Should a customer fail to pay for an order, the commission of the salesperson will be reduced accordingly.

Lyric's business is seasonal. The first season runs from the first of January through the third week of April. The second season runs from the first of July through the second week in November. The samples are returned to Lyric at the end of each season, and the salespeople are provided with another set of samples at the beginning of the next season. Between seasons the salespeople are free to do whatever they want. The relationship may be terminated at any time by either party. If Lyric is unhappy with the performance of a salesperson, it simply will not provide that person with a new set of samples at the start of the next season. Lyric does not provide cars, gas, or any other expense. No taxes are withheld, nor is insurance paid by Lyric.

The appellant's assignments of error can be summarized as follows. First, that the district court failed to find that the

appellant, the Lyric Company, met parts A and C of the "ABC test" as set out in § 48-604(5). Secondly, the district court failed to follow the case of *State v. Saville*, 219 Neb. 81, 361 N.W.2d 215 (1985), which found that the ABC test can still be met despite the legislative narrowing of the exception. Finally, appellant finds error in the district court's refusal to limit the payment of unemployment taxes after February 11, 1984, the date on which the amended § 48-604(5) became effective.

Before we address the appellant's assignments of error, we note that in *Saville* we confined our analysis to the statutory definition set out in § 48-604(5). Here, too, we will adhere to the statutory definition, in view of the Legislature's statement that "[t]he provisions of this subdivision are not intended to be a codification of the common law and shall be considered complete as written."

Appellant's first assignment of error involves the failure of the district court to find that Lyric met parts A and C of the ABC test for exemption from unemployment taxes as set out in § 48-604(5). This statute defines what constitutes an independent contractor, as follows:

> Services performed by an individual for wages shall be deemed to be employment, unless it be shown to the satisfaction of the commissioner that (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his or her contract of service and in fact, (b) such service is either outside the usual course of the business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed, and (c) such individual is customarily engaged in an independently established trade, occupation, profession, or business. The provisions of this subdivision are not intended to be a codification of the common law and shall be considered complete as written.

The Department of Labor concedes that part B of the test is met by the appellant; therefore, we may confine our analysis to parts A and C.

The two cases which are most clearly applicable to this case

and are relied heavily upon by the parties to this appeal are the cases of *State v. Saville, supra*, and *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983). The independent contractors in *Saville* were retained by the Department of Social Services. These "service providers" were assigned to a recipient of the services by the Department of Social Services. The department retained no control over the method by which the services were performed, except to require that the work be done in a workmanlike manner. There, we found that part A of the ABC test had been met.

In the *Erspamer* case we also found that the salespeople in question were independent contractors. There, however, we used the common-law analysis in coming to our conclusion, which we now no longer use in view of the statutory definition set out by the Legislature as found in § 48-604(5). *Saville, supra*.

The cases from outside Nebraska cited to us by the appellant lend insight to its position. In *Industrial Com'n v. Farm and Home Food Service, Inc.*, 5 Ariz. App. 339, 426 P.2d 808 (1967), the salespeople involved were permitted to work for other companies, paid all of their own expenses, arranged their own financing, and could hire their own employees to sell the merchandise. Compare this case to the case of *Superior Cablevision v. Indus. Com'n*, 688 P.2d 444 (Utah 1984), in which the persons involved were clearly not independent contractors. Here, the relationship was contractual, weekly payment forms were required, and insurance was paid upon the installers. They were required to wear T-shirts bearing the company name and address and to drive a white van provided by Cablevision.

The district court in the instant case held that part A had not been met because the territory of the salespeople had been defined by Lyric and the prices were set by Lyric, and the district court found what it considered to be a de facto sales quota. We disagree, looking instead to the language of the administrative law judge who heard this case on appeal to the Nebraska Appeal Tribunal, with reference to part A:

A finding of "independent contractor" status must be supported by three findings. The first test is "control".

An independent contractor must be free from control both contractually and in fact. Lyric Company, Inc. did not exert an employee's [sic] control over these salespeople. The salespeople had no set hours, no set duties, no reporting responsibility, and very little instruction and training. They were left to sell or not sell, to exert effort or not, as they determined.

We disagree with one aspect of the appeal tribunal's analysis, in that we can find no evidence in the record of *any* training or instruction provided by Lyric to its employees. We find that the lack of control exerted by Lyric over its salespeople in light of the above-cited case law places them well within part A.

Moving next to part C of the ABC test, we note that the record makes apparent that the Lyric salespeople were permitted to work for whomever else they wanted. The record reveals that the Lyric salespeople did in fact sell goods other than those sold for Lyric.

The district court relied upon the following definition of part C as rendered by the Vermont Supreme Court in the case of *In re Bargain Busters, Inc.*, 130 Vt. 112, 119, 287 A.2d 554, 559 (1972):

"The adverb 'independently' clearly modifies the word 'established', and must carry the meaning that the trade, occupation, profession or business was established, independently of the employer or the rendering of the personal service forming the basis of the claim. The present tense 'is' indicates the individual must be engaged in such independent activity at the time of rendering the service involved. . . ."

From this language the district court concluded that Lyric did not meet part C of the ABC test. It stated:

It does not contemplate a case such as the present one where the business itself exists only by virtue of a contract drawn up by the company. It would be possible for a jewelry salespeson [sic] to be customarily engaged in an independently established business if he obtained the jewels from several different sources with no strings attached. Here, however, the salespersons did not even get possession of the goods, but instead forwarded orders of

the defendant, Lyric Company, Inc. . . . . .

The district court appears to interpret § 48-604(5) somewhat differently than we have interpreted the section in the past. In *State v. Saville*, 219 Neb. 81, 87, 361 N.W.2d 215, 220 (1985), with reference to part C, we stated:

> And, finally, part C provides that "such individual is customarily engaged in an independently established trade, occupation, profession, or business." Oldfield may work exclusively for welfare recipients or may work in part for welfare recipients and in part for others. But with the simple restriction that Oldfield may not subcontract the work, there are no other restrictions as to how many "employers" she may have. Moreover, we are impressed by the fact that Welfare provides nothing to this individual, either by way of equipment or benefits, except the payment for services billed to Welfare, much in the same way as Welfare pays all other vendors of goods and services.

The facts of this case would fall well within the *Saville* interpretation; as we stated earlier, the salespeople were able to work for whomever else they pleased and, as in *Saville*, were provided with no benefits or aid from Lyric.

Finding that parts A and C of the ABC test are met, along with the parties' conclusion that part B is met, we find that Lyric's salespeople are independent contractors under the ABC test set out in § 48-604(5). In view of this finding we need not address the appellant's second and third assignments of error. We reverse.

REVERSED.