METRO RENOVATION, INC., APPELLEE, V. STATE OF NEBRASKA
DEPARTMENT OF LABOR, APPELLEE, DAN DOLAN, NEBRASKA
COMMISSIONER OF LABOR, APPELLANT, AND RUSSELL L.
LEININGER, CLAIMANT, APPELLEE.

543 N.W.2d 715

Filed February 16, 1996.   No. S-94-047.

John F. Sheaff and John H. Albin for appellant and for
appellee State.

Mark Quandahl, of Brumbaugh & Quandahl, P.C., for
appellee Metro Renovation, Inc.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT,
CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Nebraska's Commissioner of Labor (Commissioner) appeals a district court ruling that all carpenters utilized by Metro Renovation, Inc. (Metro), between January 1, 1988, and July 31, 1992, were independent contractors and that, therefore, Metro was not liable for unemployment insurance contributions for those carpenters. We reverse, and remand for further proceedings.

## ASSIGNMENTS OF ERROR

In substance, the Commissioner's assignments of error claim that the district court for Douglas County erred in (1) finding that it had jurisdiction to hear Metro's petition for judicial review, (2) applying the wrong standard of review, and (3) holding that the Commissioner's decision was arbitrary, capricious, and unsupported by the evidence.

The Commissioner also claims that the district court's final order is contrary to law and unsupported by the evidence.

## STANDARD OF REVIEW

Under Nebraska's Administrative Procedure Act, an appellate court reviews the judgment of the district court for errors on the record and will not substitute its factual findings for those of the district court where competent evidence supports those findings. *George Rose & Sons v. Nebraska Dept. of Revenue*, 248 Neb. 92, 532 N.W.2d 18 (1995); *Slack Nsg. Home v. Department of Soc. Servs.*, 247 Neb. 452, 528 N.W.2d 285 (1995). When reviewing an order of the district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995); *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.*, 246 Neb. 726, 523 N.W.2d 499 (1994).

## FACTS

Following an investigation and a hearing in Omaha, the Commissioner found that certain carpenters utilized by Metro were employees of Metro and that, therefore, Metro was liable

for unemployment insurance contributions on account of those carpenters.

Metro petitioned the district court for Douglas County for judicial review of the Commissioner's decision. The Commissioner demurred to Metro's petition, claiming that the district court for Douglas County lacked jurisdiction to hear Metro's petition for judicial review. That court overruled the demurrer.

The facts are not in dispute. Metro is a general contractor engaged in the remodeling and renovation business. Once a contract has been awarded to it, Metro engages workers to perform the construction work required at various jobsites. One such worker during the period in question was Russell L. Leininger, a representative carpenter in this case.

The evidence is undisputed that some carpenters engaged by Metro were treated as employees. These carpenters were paid an hourly wage. These workers were covered under Metro's insurance policy, workers' compensation, and unemployment insurance. In contrast, other carpenters engaged by Metro, such as Leininger, were treated as independent contractors. They submitted invoices to Metro every 2 weeks for their services provided at each jobsite. Leininger billed Metro for his services at the rate of $10 per hour. Metro did not withhold any taxes from money due these "independent contract" carpenters, nor did it pay any workers' compensation insurance premiums on account of these carpenters. Each of these carpenters was experienced and performed at the jobsites without supervision. Metro only told these "independent contract" carpenters the address of the jobsite, the work needed, and the deadline for their work to be completed. Each such carpenter supplied his or her own vehicle and tools and was not paid any expenses. Metro provided all of the materials for the jobs.

Metro maintained an office and workshop in Omaha. Although some work was done in the workshop by the "independent contract" carpenters, the great majority of Metro's business was conducted at various jobsites.

The district court reversed the decision of the Commissioner that Metro was liable for unemployment tax on the independent contract carpenters and further found that *"all carpenters*

*employed by Russell Leininger* [sic] *during the period in question were independent contractors and not employees under Nebraska Revised Statute 48-604 (5) (1988)."* (Emphasis supplied.) The Commissioner timely appealed the district court's ruling to the Nebraska Court of Appeals.

Pursuant to our authority to regulate the caseloads of the appellate courts, we removed this case from the Court of Appeals' docket to this court's docket.

## ANALYSIS

Initially, we address the Commissioner's restated first assignment of error that the district court for Douglas County lacked jurisdiction to hear Metro's petition for review. The Administrative Procedure Act is dispositive. As applicable here, it provides that "[p]roceedings for review shall be instituted by filing a petition *in the district court of the county where the action is taken* within thirty days after the service of the final decision by the agency." (Emphasis supplied.) Neb. Rev. Stat. § 84-917 (Reissue 1994).

The Commissioner argues that the phrase "where the action is taken" should be interpreted to mean "where the decision is made." The Commissioner's principal office is located in Lincoln, and it is ultimately the Commissioner who adopts or rejects the recommendation of a hearing officer as to whether unemployment insurance premiums are due from an entity utilizing workers. Under the Commissioner's interpretation of § 84-917, every petition for judicial review of whether an entity must pay unemployment insurance premiums must be filed in the district court for Lancaster County. We find the Commissioner's interpretation of § 84-917 is in error.

Before July 1, 1989, Neb. Rev. Stat. § 48-650 (Cum. Supp. 1986) provided that a petition for judicial review of the Commissioner's determination of an employer's unemployment insurance contributions had to be filed in the district court for Lancaster County. See, 1941 Neb. Laws, ch. 94, § 5, p. 392; *United Laboratories, Inc. v. Sorensen*, 220 Neb. 412, 369 N.W.2d 647 (1985); *Whitehouse Energy Savers v. Hanlon*, 214 Neb. 572, 334 N.W.2d 802 (1983). That is no longer true. Section 48-650 was amended to provide, effective July 1, 1989,

that petitions for judicial review of administrative agency decisions "shall be in accordance with the Administrative Procedure Act." See § 48-650 (Reissue 1993).

We have held that the Administrative Procedure Act's phrase "action taken" is defined by the site of the first adjudicated hearing of a disputed claim. *Bd. of Ed. of Keya Paha County v. State Board of Education*, 212 Neb 448, 323 N.W.2d 89 (1982). See, also, *Downer v. Ihms*, 192 Neb. 594, 223 N.W.2d 148 (1974). In *Downer*, the initial denial of welfare benefits and the administrative review hearing occurred in the plaintiff's county of residence. We found that under the internal regulations governing the Department of Public Welfare:

> The sole event that may occur in other than the county of the residence of the affected person is the consideration by the director of his decision. Even that is not mandated by statute for if the hearing is held before the director, as the statute authorizes, then presumably he might also make his decision in the county of the residence of the affected party.

*Id.* at 600, 223 N.W.2d at 151.

In *Bd. of Ed. of Keya Paha County, supra*, the initial denial of tuition payments by the State Board of Education occurred in Keya Paha County. However, the site of the first adjudicated hearing between the Keya Paha School District and the State Board of Education occurred in Lincoln. Citing to *Downer, supra*, the court found that the district court for Keya Paha County lacked jurisdiction to hear the case and dismissed the appeal.

In the present case, the unemployment tax administrator's decision that Metro is liable for past unemployment insurance contributions for the carpenters involved here was the result of information provided by a Department of Labor field representative sent to investigate Metro in Omaha.

The Commissioner set Omaha as the place of the first adjudicated hearing. A hearing officer appointed by the Commissioner made findings of fact following a hearing and made his recommendation in a three-page opinion. As in *Downer*, the Commissioner's only act in Lincoln was his final decision to adopt the recommendation of both the hearing

officer and the tax administrator. Accordingly, the district court for Douglas County did have jurisdiction to hear Metro's petition for judicial review because Douglas County was where the first adjudicated hearing was held.

The Commissioner's restated second and third assignments of error amount, in substance, to a claim that the district court applied the wrong standard of review.

Under § 84-917(5), when a petition for judicial review of an administrative agency's decision is filed in the district court on or after July 1, 1989, the review shall be conducted by the court without a jury de novo on the record of the agency.

The Commissioner claims in his brief that in the district court, "[a]lthough it was a *de novo* review, the parties proceeded upon the premise that the employer had satisfied *Neb. Rev. Stat.* § 48-604(5)(a) and (c) [(Reissue 1993)]." Brief for appellant at 12. Thus, the only contested issue was whether the employer had satisfied Neb. Rev. Stat. § 48-604(5)(b) (Reissue 1993). These were the findings of the Commissioner's hearing officer and were adopted by the Commissioner in his final decision.

It is a general rule that a party cannot complain of error which that party was instrumental in bringing about. See, *Schrempp and Salerno v. Gross*, 247 Neb. 685, 529 N.W.2d 764 (1995); *Norwest Bank Neb. v. Bowers*, 246 Neb. 83, 516 N.W.2d 623 (1994). Because the Commissioner and Metro proceeded in the district court under the presumption that the hearing officer's findings were correct as to subsections (a) and (c) of § 48-604(5), the Commissioner cannot now complain that the district court did not review those issues de novo on the record, nor can the Commissioner complain that the district court erred in applying the wrong standard of review on those points. The Commissioner's second and third assignments of error are without merit.

The Commissioner's final claim that the district court's decision is contrary to law and unsupported by the evidence has merit. The district court found that "all carpenters employed by Russell Leininger [sic] during the period in question were independent contractors and not employees under Nebraska Revised Statute **48-604 (5) (1988)**." The Commissioner

conceded in his brief and at oral arguments that Metro met the (a) and (c) portions of § 48-604(5). As such, the Commissioner contends that the district court erred in determining that the work performed by all carpenters utilized by Metro was not "performed outside of all the places of business of the enterprise for which such service is performed," as required by § 48-604(5)(b).

Section 48-604(5) defines the term "independent contractor." It reads:

> Services performed by an individual for wages shall be deemed to be employment, unless it be shown to the satisfaction of the commissioner that (a) such individual has been and will continue to be free from control or direction over the performance of such services . . . (b) such service is either outside the usual course of the business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed, and (c) such individual is customarily engaged in an independently established trade, occupation, profession, or business. The provisions of this subdivision are not intended to be a codification of the common law and shall be considered complete as written.

We have yet to define "places of business" in the context of § 48-604(5)(b). Although *Commissioner of Labor v. Lyric Co.*, 224 Neb. 190, 397 N.W.2d 32 (1986); *State v. Saville*, 219 Neb. 81, 361 N.W.2d 215 (1985); and *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983), deal with § 48-604(5), none specifically address § 48-604(5)(b).

The Commissioner relies on the Court of Appeals' recent decision in *Bay Constr. Co. v. Dolan*, 2 Neb. App. 739, 513 N.W.2d 555 (1994), for the proposition that the places of business of an employer in the construction industry necessarily include all of the worksites where the employer renders its construction services. It should be noted that although an opinion of the Court of Appeals which has been designated for permanent publication may be cited for whatever persuasive force it may have, see Neb. Ct. R. of Prac. 2E(4) (rev. 1993), such an opinion does not constitute binding precedent.

Once a court has been created, it is free, within the administrative directions of this court and the limits of its jurisdiction, to operate as it chooses. Neb. Const. art. V, § 1; *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994). The purpose for which a court was established can nonetheless be discerned from the statutes creating it.

Neb. Rev. Stat. § 24-1104 (Cum. Supp. 1994) envisions that decisions of the Court of Appeals be published only in limited circumstances. The foregoing statute provides that opinions of the Court of Appeals be in the form of an order which may be accompanied by a memorandum opinion. According to the statute, memorandum opinions are to be published upon order of the Court of Appeals only if one or more of the following factors are present:

(a) Whether the decision enunciates a new rule of law;

(b) Whether the decision applies an established rule of law to a factual situation significantly different from that in published opinions;

(c) Whether the decision resolves or identifies a conflict between prior Court of Appeals decisions;

(d) Whether the decision will contribute to legal literature by collecting case law or reciting legislative history; and

(e) Whether the decision involves a case of substantial and continuing public interest.

Thus, although § 24-1104 provides guidelines regarding publication of Court of Appeals opinions, it is appropriately silent as to whether those opinions are binding authority, for the answer to that question is to be found in a judicial analysis of the doctrine of stare decisis and the unique structure of appellate courts in this state.

The doctrine of stare decisis requires courts to abide by, or adhere to, decided cases. *State v. Lowe*, 248 Neb. 215, 533 N.W.2d 99 (1995); *Nebraska Conf. Assn. Seventh Day Adventists v. County of Hall*, 166 Neb. 588, 90 N.W.2d 50 (1958); *Muller v. Nebraska Methodist Hospital*, 160 Neb. 279, 70 N.W.2d 86 (1955), *overruled on other grounds, Myers v. Drozda*, 180 Neb. 183, 141 N.W.2d 852 (1966). Precedent is an adjudged case or decision of a court, which furnishes an

example or authority for an identical or similar case afterward arising or a similar question of law. Black's Law Dictionary 1176 (6th ed. 1990).

The doctrine rests upon the notion that the common law is inseparably identified with the decisions of the courts. *Kresha v. Kresha*, 216 Neb. 377, 344 N.W.2d 906 (1984). Adherence to settled law promotes stability and certainty. A Court of Appeals decision cannot be said to have conclusively settled an issue of law because this court is the ultimate authority in fashioning precedential law for Nebraska.

In Nebraska, appeals are generally to the Court of Appeals. However, "capital cases, cases in which life imprisonment has been imposed, and cases involving the constitutionality of a statute" shall be appealed to the Supreme Court. Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 1994). Moreover, appellate jurisdiction to address the constitutionality of a statute is vested in the Supreme Court under Neb. Const. art. V, § 2. That section requires a concurrence of five judges to hold an act of the Legislature unconstitutional.

Since the Court of Appeals lacks the authority to declare a statute unconstitutional, any discussion by that court of the constitutionality of a statute would be dicta at best. Further, the publication of such dicta would cast doubt upon the statute and could plunge those charged with enforcing it into an unsettled state.

As envisioned by the creating statutes, the Court of Appeals makes its decisions not as a court sitting en banc, but in constantly rotating panels of three of its judges. Neb. Rev. Stat. § 24-1101 (Cum. Supp. 1994). Litigants may petition to bypass the Court of Appeals whenever their case presents a question of first impression, a novel legal question, or the validity of a statute, or when it involves a significant public interest. Clearly, the Court of Appeals was designed to function as an error correcting tribunal, not as a doctrinal court.

That the Court of Appeals is an error correcting court is further illustrated by two other facts. First, § 24-1104 has been amended so as to remove language which purported to permit the Court of Appeals to modify, clarify, or criticize an existing rule of law. 1993 Neb. Laws, L.B. 462, § 1. Second, at the

same time, language which originally permitted this court to determine which Court of Appeals decisions should be published was revised such as to give the Court of Appeals the authority to make that determination. This amendment removed any suggestion that the publication of an opinion of the Court of Appeals carried with it the approval of this court of either the decision or its rationale.

Real and certain risks are associated with the grant of precedential authority to an intermediate appellate court. See *Tebo v Havlik*, 418 Mich. 350, 343 N.W.2d 181 (1984). If binding authority were to be granted to published Court of Appeals decisions, then lower courts would be forced to follow a decision even though they were not certain whether this court might ultimately rule similarly.

A panel of the Court of Appeals may be presented with a particular issue which has never been addressed by this court. Therefore, that panel is occasionally forced to enunciate a new rule of law and may deem its opinion worthy of publication. When an opinion of the Court of Appeals which has been designated for permanent publication is the only Nebraska case which addresses an issue, it may be cited. Neb. Ct. R. of Prac. 2E(4) (rev. 1993). If the rationale of a published Court of Appeals decision in a case of first impression is persuasive to a lower court in the discharge of its duty to ascertain and apply the law of Nebraska, the lower court is free to follow the opinion. However, such reliance necessarily carries the risk that another panel of the Court of Appeals may reach a different conclusion. For example, in *State v. Martinez*, 4 Neb. App. 192, 200, 541 N.W.2d 406, 412 (1995), one panel wrote of another panel's interpretation of a decision of this court, "We do not believe that *State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984), supports the . . . proposition which our respected colleagues set forth in *State v. Quick*, [1 Neb. App. 756, 511 N.W.2d 168 (1993)]," and read *Piskorski* differently than did the *Quick* panel. Additionally, such reliance carries the risk that this court may find that the Court of Appeals misapprehended the law. E.g., *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995); *In re Adoption of Kassandra B. & Nicholas B.*, 248 Neb. 912, 540 N.W.2d 554 (1995).

As for the present case, the rationale used in *Bay Constr. Co. v. Dolan*, 2 Neb. App. 739, 513 N.W.2d 555 (1994), is not persuasive, and it is rejected. The *Bay Constr. Co.* court's reasoning precludes any construction company from ever meeting the requirements of § 48–604(5)(b) with regard to tradespeople hired for construction work. Such a reading of § 48–604(5)(b) renders the worksite meaningless as a test to determine what constitutes an independent contractor in the construction industry.

In the case at bar, the record reflects that Metro engaged both carpenters who were treated as employees and others who were treated as independent contractors. Metro had offered Leininger the option of becoming an employee, but he chose to continue his independent contractor relationship. The record also reflects that Metro maintained a workshop next to its offices where only a small portion of Leininger's work was carried out. Copies of invoices submitted to Metro show that Leininger worked at as many as eleven different sites over a 2–week period.

Under the Administrative Procedure Act, an appellate court reviews the judgment of the district court for errors on the record and will not substitute its factual findings for those of the district court where competent evidence supports those findings. *George Rose & Sons v. Nebraska Dept. of Revenue*, 248 Neb. 92, 532 N.W.2d 18 (1995); *Slack Nsg. Home v. Department of Soc. Servs.*, 247 Neb. 452, 528 N.W.2d 285 (1995). In the case at bar, the district court found in its order that "all carpenters employed by Russell Leininger [sic] during the period in question were independent contractors and not employees." Those findings are in error and not supported by the evidence. First, it is not a question of whether "all carpenters" were independent contractors, but only those carpenters whom Metro claimed to be independent contractors whose status was questioned by the Commissioner. Second, it was Metro rather than Leininger who utilized the carpenters in question.

The cause is remanded to the district court for Douglas County for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTION.

CONNOLLY, J., concurring in the result.

I concur in the result reached by the majority, but write

separately to voice my disagreement with the part of the opinion which states: "It should be noted that although an opinion of the Court of Appeals which has been designated for permanent publication may be cited for whatever persuasive force it may have, see Neb. Ct. R. of Prac. 2E(4) (rev. 1993), such an opinion does not constitute binding precedent."

The majority correctly states that the answer to the question of whether a permanently published opinion of the Court of Appeals is binding authority "is to be found in a judicial analysis of the doctrine of stare decisis." However, instead of conducting this analysis, the majority merely bases its conclusion upon the premise that this court is free to operate as it chooses. While this is true, the majority, by its choice, has gutted the common-law doctrine of stare decisis. Such a choice flies directly in the face of all persuasive authority.

"Vertical stare decisis" compels inferior courts to follow strictly the decisions rendered by courts of higher rank within the same judicial system. See, *State v. Menzies*, 889 P.2d 393 (Utah 1994); *Barstow v. State*, 742 S.W.2d 495 (Tex. App. 1987). It is my view that under the doctrine of vertical stare decisis, all tribunals in this state exercising inferior jurisdiction must follow the permanently published opinions rendered by the Court of Appeals unless overruled by this court. See *Jaffree v. Board of School Commissioners*, 459 U.S. 1314, 103 S. Ct. 842, 74 L. Ed. 2d 924 (1983).

The principal case on the issue of vertical stare decisis is *Auto Equity Sales, Inc. v. Superior Court*, 57 Cal. 2d 450, 369 P.2d 937, 20 Cal. Rptr. 321 (1962). In that case, an inferior court recognized that a case decided by a California appellate court was directly on point, but refused to follow the rule of the case on the ground that it had been decided incorrectly. The California Supreme Court stated:

> Under the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of *stare decisis* makes no sense. . . . Courts exercising inferior jurisdiction *must* accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court.
> . . .

. . . It would create chaos in our legal system if these courts were not bound by higher court decisions.

(Emphasis supplied.) *Id.* at 455–56, 369 P.2d at 939–40, 20 Cal. Rptr. at 323–24.

In my search, I have not found any state which has ruled by case law or otherwise that inferior courts are free to ignore or overrule precedent set forth by the state's intermediate appellate court. See *State v. Guzman*, 122 Idaho 981, 986, 842 P.2d 660, 665 (1992) ("a new principle of law announced by the Court of Appeals . . . becomes precedential law of this state, and all tribunals inferior to the Court of Appeals are obligated to abide by decisions issued by the Court of Appeals. To our knowledge, neither a district judge nor a trial judge has ever suggested not being bound by new principles of law, whether they emanate from this Court or from the Court of Appeals") (emphasis omitted). See, also, *Harrel v. Dillards Dept. Stores, Inc.*, 268 Ill. App. 3d 537, 644 N.E.2d 448 (1994); *Tart v. Com.*, 17 Va. App. 384, 437 S.E.2d 219 (1993); *Adamowicz v. Ipswich*, 395 Mass. 757, 481 N.E.2d 1368 (1985); *Martin v. Dist. Ct.*, 191 Colo. 107, 550 P.2d 864 (1976); *Bunn v. Bunn*, 311 So. 2d 387 (Fla. App. 1975).

Stare decisis is the very basis of our judicial system and is inseparably linked to the hierarchial structure of the state and federal courts. See *In re Shattuc Cable Corp.*, 138 B.R. 557 (Bankr. N.D. Ill. 1992). "It played an important part in the development of English common law and its importance has not diminished today." *State v. Dwyer*, 332 So. 2d 333, 335 (Fla. 1976).

Furthermore, there are compelling public policy reasons in support of recognizing permanently published decisions of the Court of Appeals as binding authority, including reliance on equality, stability, and predictability in the law. A fundamental element of Anglo–American jurisprudence is the principle that the law should be stable, fostering both equality and predictability of treatment. See, Paul W. Werner, Comment, *The Straits of Stare Decisis and the Utah Court of Appeals: Navigating the Scylla of Under–Application and the Charybdis of Over–Application*, 1994 B.Y.U. L. Rev. 633 (1994); Brian E. Mattis and B. Taylor Mattis, *Erie and Florida Law Conflict at*

*the Crossroads: The Constitutional Need for Statewide Stare Decisis*, 18 Nova L. Rev. 1333 (1994). In order to preserve equality, stability, and predictability in the law, trial courts must follow the holdings of higher courts regardless of whether they agree with the other court's analysis or conclusion. See *State v. Dwyer, supra.*

The citizens of Nebraska, as well as Nebraska lawyers, should be able to expect, to the greatest extent possible, that trial courts will apply the same law in Scottsbluff, Grand Island, Lincoln, and Omaha, Nebraska. The fundamental value of equal treatment, requiring that persons in like circumstances be treated alike unless some relevant factor distinguishes their cases, is central to traditional notions of Anglo–American justice. See Werner, *supra*. The majority's statement to the contrary promotes the rule of individual judges rather than the rule of law and will foster unnecessary appeals.

"Any court, though required to follow precedent established by a higher court, can set forth the reasons why, in its judgment, the established precedent should be overruled but cannot, on its own, overrule the established precedent set by a higher court." *Special Fund v. Francis*, 708 S.W.2d 641, 642 (Ky. 1986). Trial judges are free to vigorously express their disagreement with controlling precedent from the Court of Appeals, but a workable system of jurisprudence requires that they obey that precedent until this court rules otherwise.

The majority has failed to give a rational explanation for its conclusion that permanently published opinions of the Court of Appeals do not constitute binding precedent on courts of inferior jurisdiction. In an attempt to justify its conclusion, the majority states that "[a] Court of Appeals decision cannot be said to have conclusively settled an issue of law because this court is the ultimate authority in fashioning precedential law for Nebraska." Certainly, everyone would agree that this court is the ultimate authority in fashioning precedential law for Nebraska. However, this does not support the majority's conclusion that inferior courts are free to ignore the permanently published opinions of the Court of Appeals.

The majority suggests that "[i]f binding authority were to be granted to published Court of Appeals decisions, then lower

courts would be forced to follow a decision even though they were not certain whether this court might ultimately rule similarly." It is self-evident to any first-year law student that nothing an intermediate appellate court says is set in jurisprudential concrete. If one follows the majority's reasoning to its logical conclusion, then one could argue that binding authority should not be given to this court's decisions on constitutional issues because lower courts would be forced to follow them even though they were not certain whether the U.S. Supreme Court might ultimately rule similarly. The same could be said of the circuit courts of appeals on the federal level.

The majority then states that "[r]eal and certain risks are associated with the grant of precedential authority to an intermediate appellate court" and cites *Tebo v Havlik*, 418 Mich. 350, 343 N.W.2d 181 (1984). However, in *Tebo*, the court held that "[a] decision by any panel of the Court of Appeals is . . . controlling statewide until contradicted by another panel of the Court of Appeals or reversed or overruled by this Court." 418 Mich. at 362, 343 N.W.2d at 185. Clearly, whatever risks the majority claims were of concern to the *Tebo* court were not real and certain enough to cause that court to ignore the doctrine of stare decisis.

The majority also asserts that conflicting decisions from different panels of the Court of Appeals is a risk that justifies their position. However, this alleged risk is simply nonexistent. The simple, risk-free solution to this scenario is that this court will decide the issue when it comes before us.

The majority also argues that the purpose for which a court was established can be discerned from the statutes creating it. They then cite Neb. Rev. Stat. § 24–1104 (Cum. Supp. 1994), which was amended to allow the Court of Appeals to decide what opinions to publish, and draw the conclusion that since this statute is silent as to whether those opinions are binding authority, the opinions do not have any such authority. I am baffled by how a statute that is silent on the issue in question, and was amended to switch the power to determine which opinions will be published from this court to the Court of Appeals, supports the conclusion that such opinions should not be given precedential authority.

Finally, the majority makes reference to the unique structure of the appellate court in this state. The only thing unique about our appellate structure is that the majority of this court refuses to follow the common-law doctrine of vertical stare decisis.

Because there exists no rationale in support of the majority's view, and compelling historical and policy reasons support the view that permanently published opinions of the Court of Appeals should be given the effect of law, I conclude that permanently published opinions should constitute binding precedent on this state's trial courts until this court rules otherwise.

WRIGHT and GERRARD, JJ., join in this concurrence.