DONNA PETTIT, APPELLANT, v. STATE OF NEBRASKA,
DEPARTMENT OF SOCIAL SERVICES, APPELLEE.
544 N.W.2d 855

Filed March 22, 1996. No. S-94-797.

William J. Ross, of Ross, Schroeder, Brauer & Romatzke, for appellant.

Don Stenberg, Attorney General, and Lynne R. Fritz for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

FAHRNBRUCH, J.

The issue in this litigation is whether Donna Pettit, a chore provider of an aged and disabled individual under the Medicaid Waiver Program, was an employee of the Nebraska Department of Social Services (DSS) when she injured her lower back while providing chore services.

The Workers' Compensation Court found that Pettit did not prove that she was a DSS employee. Upon appeal, the Nebraska Court of Appeals reversed the Workers' Compensation Court and held that, as a matter of law, Pettit was a DSS employee when she was injured. *Pettit v. State*, 95 NCA No. 28, case No. A–94–797 (not designated for permanent publication).

The record fails to reflect that there was a clear inference as to whether Pettit was an employee or an independent contractor when she was injured. As a result, we reverse the holding of the Court of Appeals, because the employee–contractor issue was a question of fact and not a matter of law. We hold that there was sufficient competent evidence in the record to support the Workers' Compensation Court's determination that Pettit was not an employee of DSS.

## ASSIGNMENTS OF ERROR

In substance, DSS claims that the Court of Appeals erred (1) in determining, as a matter of law, that Pettit was a DSS employee; (2) in failing to hold that the Workers' Compensation Court was not clearly wrong in finding that Pettit had failed to

meet her burden of proving that she was a DSS employee; and (3) in failing to follow precedent established in *State v. Saville*, 219 Neb. 81, 361 N.W.2d 215 (1985).

## STANDARD OF REVIEW

A judgment, order, or award of the Worker's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. Neb. Rev. Stat. § 48–185 (Reissue 1993). See, also, *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995).

Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. See *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995). In testing the sufficiency of the evidence to support the findings of fact, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995).

On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the inferior courts. *Stansbury v. HEP, Inc.*, 248 Neb. 706, 539 N.W.2d 28 (1995).

Ordinarily, the party's status as an employee or an independent contractor is a question of fact. However, where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law. *Hemmerling v. Happy Cab Co.*, 247 Neb. 919, 530 N.W.2d 916 (1995); *Stephens v. Celeryvale Transport, Inc.*, 205 Neb. 12, 286 N.W.2d 420 (1979). By stating "where the inference is clear," this court means that there can be no dispute as to pertinent facts pertaining to the contract and the relationship of the parties

involved and only one reasonable inference can be drawn therefrom. See, *Vontress v. Ready Mixed Concrete Co.*, 170 Neb. 789, 104 N.W.2d 331 (1960); *Mansfield v. Andrew Murphy & Son*, 139 Neb. 793, 298 N.W. 749 (1941).

## FACTS

In July 1991, Pettit began providing chore services for Virginia Poels, a DSS client, as part of the Medicaid Waiver Program. Dorelle Wilson, a DSS resource developer for the Medicaid Waiver Program, testified that the Medicaid Waiver Program allowed low-income people to be cared for in their homes rather than in nursing homes. Twylla Stevens, a DSS case manager for the Medicaid Waiver Program, testified that DSS' role is one of an advocate between the client and the provider, ensuring that state and federal criteria and health and safety needs are met.

Wilson testified that in searching for chore providers, she would "tap everything that [she] could" and one time even "knocked door to door in a trailer park" recruiting chore providers.

Pettit held a respite care certificate from the Good Samaritan Hospital in Kearney. Pettit had previously worked various jobs, which included taking care of elderly people. None of her previous jobs of caring for the elderly were through DSS; rather, Pettit hired herself out directly to elderly clients.

Before she was engaged as a chore provider, Pettit talked to Poels by telephone. Poels approved of Pettit as her chore provider. Before providing services for a client, the chore provider must be approved by the client. The client has the authority to fire the chore provider.

Wilson informed Pettit that Pettit was an independent contractor and that she would not receive sick leave, vacation leave, or insurance. Wilson further informed Pettit that Poels was her employer. Stevens testified that she specifically told Pettit that Poels, not the State, was her boss and that Pettit was not covered by workers' compensation.

Pettit's 1992 W-2 form reflects that no federal income tax was withheld from Pettit's income. Poels filed with the Internal Revenue Service an Employer Appointment of Agent form

which designated her as an employer and DSS as her agent. Pettit's W–2 form designated Poels as Pettit's employer.

Pettit's job tasks were set out in a signed agreement between Pettit and DSS. The agreement did not allow Pettit to subcontract and included the required number of hours for Pettit to work at the accompaning pay rate of $5 per hour. In the agreement, Pettit agreed to provide service only as authorized in accordance with DSS standards, to apply to the client the same standards applied to private–paying persons, to permit monitoring and evaluation from government officials, to respect the client's right to confidentiality, and to accept responsibility for the client's safety and property. DSS provided Pettit with a handbook, which included defined activities to be carried out by Pettit. The DSS manual specified that Pettit would be responsible for providing supplies if the client did not provide them. The record reflects that Poels furnished the supplies for Pettit to clean Poels' home.

Pettit performed her work at Poels' home in Kearney. She began her chores between 7:30 and 8 a.m. and worked until all chores for that day were completed. Generally, Pettit's tasks would include assisting Poels (1) from her bed to her wheelchair, (2) in the bathroom, (3) in dressing and undressing, (4) in cleaning her home, (5) in grocery shopping and other errands, and (6) in routine walks. Pettit was also required to make certain that Poels took her medication. DSS informed Pettit of what needed to be performed. Poels and Pettit set up the daily routine of how to get the tasks accomplished. Poels generally scheduled and arranged her own appointments and errand trips. Stevens would make suggestions regarding certain tasks, such as the making of doctor appointments, and would visit with Pettit and Poels once a month. On one occasion, DSS reprimanded Pettit for leaving Poels alone while Poels was in the bathtub. When Pettit could not attend work, she notified DSS, which told Pettit to find a replacement.

To receive her salary, Pettit would complete a work calendar of the hours she worked and rate of pay and send it to Stevens. The calendar was signed by Pettit and Poels. Pettit was authorized a maximum of 40 hours of work per week, and she was responsible for keeping track of her hours. DSS paid Pettit

by mail. Pettit also received additional direct payment from Poels, which was a monthly set amount that the client was required to pay the provider. Poels paid Pettit approximately $360 per month in 1991 and approximately $390 per month in 1992.

On August 6, 1992, DSS terminated Pettit's employment because Poels' health and safety needs could no longer be met within the constraints of the Medicaid Waiver Program. Because Poels paid Pettit in advance, Pettit reimbursed Poels $300 for time that she had not worked.

Before her termination, Pettit suffered a herniated fifth lumbar disk while attempting to lift Poels into her wheelchair. Pettit sought workers' compensation from DSS as a result of the injury. In her petition, the issues in dispute were (1) whether Pettit was an employee of DSS, (2) whether Pettit was entitled to temporary total disability benefits, (3) whether Pettit had incurred permanent physical impairment or a decrease in her earning capacity, and (4) whether Pettit was entitled to additional compensation and attorney fees. The Workers' Compensation Court dismissed her petition, finding that Pettit had failed to prove by a preponderance of the evidence that she was a DSS employee. A Workers' Compensation Court review panel found that the trial court's findings were not clearly wrong and affirmed the dismissal.

Pettit appealed to the Court of Appeals. In addressing whether Pettit was an employee of DSS or an independent contractor, the Court of Appeals held that the right of control is the chief factor distinguishing an employer–employee relationship from that of an employer and independent contractor. The court found that the control by DSS over Pettit predominated all other facts and that Pettit was an employee of DSS as a matter of law.

DSS petitioned for further review, and we granted its petition.

## ANALYSIS

Whether Pettit was an independent contractor or an employee of DSS presented the Workers' Compensation Court with a jurisdictional question. The plaintiff in Workers' Compensation

Court must prove that she or he has employee status to invoke the jurisdiction of the court. See *Anthony v. Pre–Fab Transit Co.*, 239 Neb. 404, 476 N.W.2d 559 (1991).

There are 10 factors which are considered in determining whether a person is an employee or an independent contractor: (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business. *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995).

The right of control is the chief factor distinguishing an employment relationship from that of an independent contractor. *Hemmerling v. Happy Cab Co.*, 247 Neb. 919, 530 N.W.2d 916 (1995). Pettit was recruited to work for Poels by DSS. However, for Pettit to work for Poels was contingent upon Poels' approval. DSS could and did terminate Pettit when the Medicaid Waiver Program could not serve Poels' needs. The record, however, reflects that Poels also had control over Pettit and authority to terminate her services. The agreement between DSS and Pettit provided that Pettit must provide services in accordance with DSS standards, and the DSS' handbook defined the activities that Pettit needed to carry out. Pettit was observed once a month by DSS and was reprimanded for leaving Poels alone while Poels was in the bathtub. It was Pettit and Poels who set up the daily routine of how to accomplish tasks involving Poels, and it was Poels who arranged her schedule for appointments and errands. While DSS had control over the essential criteria that Pettit must meet, Pettit and Poels had control over the daily

routine of how to meet DSS' criteria. The employer of an independent contractor may, without changing the status, exercise such control as is necessary to ensure performance of the contract in accordance with its terms. *Larson v. Hometown Communications, Inc., supra.*

The agreement between DSS and Poels does not clearly denominate the relationship between the parties, and the record reflects a factual dispute as to whether DSS had such control over Pettit as to create a DSS employer–employee relationship. Clearly, more than one reasonable inference can be drawn from the facts as to whether Pettit was an employee or an independent contractor. Thus, the Court of Appeals erred in finding that Pettit was an employee as a matter of law.

Regarding the criterion of control, the record reflects that Poels had control over the hiring and firing of Pettit and that Pettit and Poels had control over the specific daily tasks. An independent contractor is one who, in the course of an independent occupation or employment, undertakes work subject to the will or control of the person for whom the work is done only as to the result of the work and not as to the methods or means used. Such a person is not an employee within the meaning of the workers' compensation statutes. *Hemmerling v. Happy Cab Co., supra.*

The second criterion is whether Pettit was engaged in a distinct occupation or business. The record reflects that Pettit held a respite care certificate from the Good Samaritan Hospital in Kearney. Among her various jobs, she took care of elderly people. Her work in providing care for the elderly was not through DSS, but through direct agreements between Pettit and the elderly clients. Thus, Pettit had engaged in the distinct business of providing care for the elderly.

The third criterion concerns whether the DSS chore provider is an occupation done under the direction of the employer or by a specialist without supervision. As stated earlier, the record reflects that DSS provides the chore provider with general direction requiring the provider to meet government standards of care. However, the record also reflects that there is very little direct supervision of a chore provider by DSS. In fact, DSS only observed Pettit once a month. Therefore, Pettit, while

operating under DSS directives, was supervised more by Poels than by DSS.

The fourth criterion concerns the skill required by the occupation. The less skill required by a job, the greater the indication that the worker is an employee and not an independent contractor. *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995). Although Pettit had specific training and skills at providing care to the elderly, the record is not clear as to whether such skills were required. The record reflects that DSS would go to whatever resources necessary, including door–to–door inquiries, to find chore providers. Whether DSS would recruit individuals with no experience is not clear from the record. However, in the case at bar, Pettit had specialized training, providing an inference that she was an independent contractor.

The fifth criterion concerns who supplied the tools and the place for work. It is beyond dispute that Poels provided the supplies and that the work was performed at Poels' residence. According to the DSS manual, if Poels did not supply necessary tools, it would have been Pettit's responsibility to supply those tools. Clearly, under this criterion, Pettit's status appeared to be that of an independent contractor.

The sixth criterion regards the length of time for which Pettit was employed. Pettit's job was designed only toward accomplishing the sole task of being a chore provider for Poels. Thus, Pettit's job was terminated when Poels' condition deteriorated to the point that the Medicaid Waiver Program could no longer meet Poels' needs. That her job was of a short duration for the accomplishment of specific tasks provides the inference of an independent contractor.

The seventh criterion deals with whether Pettit was paid by the time she expended or by the job. Pettit was paid by the hour. Specifically, DSS paid Pettit $5 per hour. Poels also paid Pettit in advance. The record reflects that Poels paid Pettit by the time Pettit worked, because Pettit reimbursed Poels for time she had not worked after her job was terminated. Therefore, the seventh criterion weighs in favor of Pettit as an employee.

The eighth criterion concerns whether the chore provider service of the Medicaid Waiver Program is part of DSS' regular

business. DSS is not in the business of cleaning houses or transporting persons to doctors or stores, but, rather, it is in the business of paying for the services pursuant to welfare programs. See *State v. Saville*, 219 Neb. 81, 361 N.W.2d 215 (1985).

The ninth criterion concerns whether Pettit and DSS believed they were creating an agency relationship. The record reflects that DSS viewed its role as being an advocate between the client and the chore provider. DSS informed Pettit that she was an independent contractor and that Poels was her boss. Pettit's W-2 form related that Poels was Pettit's employer. The agreement between DSS and Pettit did not designate Pettit as employee or independent contractor. However, it is clear from the record that both parties understood that Pettit was an independent contractor.

The final criterion concerns whether DSS is in business. DSS is in the business of distributing funds, part of which come from the federal government and part of which are matching funds provided by the State, in order to permit welfare recipients to obtain needed services for which they could not otherwise pay. See *State v. Saville, supra*. As stated earlier, DSS is not in the regular business of providing chore services to elderly clients.

The only factor clearly favoring a finding that Pettit was an employee was that she was paid by the hour. The issue of control and all other relevant factors reflect that the trial court was not clearly wrong in finding that Pettit did not prove that she was an employee of DSS.

Because Pettit did not prove by a preponderance of the evidence that she was a DSS employee, the Workers' Compensation Court lacked jurisdiction to award workers' compensation benefits to her. As a result, we need not address DSS' third assignment of error.

## CONCLUSION

In the case at bar, the facts were in dispute as to the relationship between the parties and more than one reasonable inference could be drawn. Pettit's status as an employee or an independent contractor was a question of fact, and the Court of Appeals erred in treating the issue as a matter of law. The

Workers' Compensation Court was not clearly wrong in finding that Pettit did not meet her burden of proving that she was an employee of DSS. We reverse the holding of the Court of Appeals and remand the cause to that court with direction to affirm the ruling of the trial court.

REVERSED AND REMANDED WITH DIRECTION.