REQUESTED BY: Shane Osborn
State Treasurer
The Nebraska State Records Board ("NSRB" or "Board") has been created and given authority under the Nebraska Records Management Act, Neb. Rev. Stat. §§ 84-1201 through 84-1227 (2008), to oversee the official website of the State of Nebraska, Nebraska.gov. The NSRB has contracted with Nebraska Interactive, Inc. ("NII"), a private entity, to develop, implement, maintain and operate Nebraska.gov. As part of its duties, NII provides access on Nebraska.gov to public records, on an agency-by-agency basis, for a fee. The majority of the public records accessed online are those of the Nebraska Department of Motor Vehicles ("DMV"). The DMV has determined it would be advantageous to offer additional services through Nebraska.gov, such as the ability to renew one's motor vehicle registration online.
You have requested a formal opinion from the Attorney General's Office regarding several questions relating to the NSRB and the State of Nebraska website, Nebraska.gov, and the authority to offer motor vehicle registration renewals through this web portal. You have posed the following questions:
 (1) "Does the NSRB, which has jurisdiction only over operating a portal for electronic access of state records, have the statutory authority to approve the sales of DMV [vehicle registration] renewals over the Internet? Has the NSRB expanded beyond the intent of the Legislature when it enters into the ratification of e-commerce contracts between state agencies and NII?"
 (2) "If [Visa] Operating Regulations 5.2.E prohibits the State of Nebraska, its agencies, or officers from a percentage-based convenience fee for credit card charges and prevents us from avoiding the prohibition by using a third party, such as NII, and Neb. Rev. Stat. § 81-118.01(6) requires us to follow the Operating Regulations of credit card providers, do you agree the NSRB cannot contract with NII to avoid violating 5.2.E, and that the NSRB cannot ignore NII's business model if it violates statute?" and
 (3) "Given the control, close ties, and collection of State fees for state agencies by NII for the State of Nebraska, is NII acting as an agent for the State agencies when collecting fees through the state portal? And, if so, should it be complying with the deposit requirements of Neb. Rev. Stat. § 84-710?"
In addition, it seems to us that it is necessary to answer another question to reach the questions you have posed, that of whether the relationship between the NSRB and NII is one of an independent contractor or an agent. We will address that question first.
For the reasons set forth below, we conclude that NII is an independent contractor, that the NSRB does have the necessary authority to authorize motor vehicle registration renewals through Nebraska.gov, and that NII is not subject to Neb. Rev. Stat. § 81-118.01(2008) or Neb. Rev. Stat. § 84-710(2008).
Nebraska Interactive, Inc. is an Independent Contractor
The Nebraska statute which created the NSRB contemplated that the Board could contract with an outside entity to provide services related to the development and maintenance of Nebraska.gov, which is often referred to as the "gateway" or "electronic network."
Neb. Rev. Stat. § 84-1204 (2008) provides in pertinent part:
 (1) The State Records Board is hereby established. The [B]oard shall:
 * * *
 (c) Develop and maintain a gateway or electronic network for accessing public records;
 (d) Provide appropriate oversight of a network manager;
 (e) Approve reasonable fees for electronic access to public records pursuant to sections 84-1205.02
and 84-1205.03 and submit contracts for public biding pursuant to section 84-1205.04.
Neb. Rev. Stat. § 84-1205 (2008) states:
 (1) The [B]oard may employ or contract with a network manager. A network manager may include an individual, a private entity, a state agency, or another governmental subdivision. . . . The [B]oard may negotiate and enter into a contract with the selected network manager which provides the duties, responsibilities, and compensation of the network manager.
 (2) The network manager shall direct and supervise the day-to-day operations and expansion of a gateway of or electronic network to make public records available electronically, including the initial phase of operations necessary to make the gateway operational. The network manager shall attend meetings of the [B]oard, keep a record of all gateway, electronic network, and related operations, which shall be the property of the [B]oard, maintain and be the custodian of all financial and operational records, and annually update and revise the business plan for the gateway or electronic network, in consultation with and under the direction of the [B]oard.
The Nebraska Supreme Court has provided much guidance into the standard for determining if a contractor, such as NII, is truly an "independent contractor," or is instead an "agent" of the entity with which it contracts. There is no single test used to make this determination, but instead, a series of factors must be weighed, independent of the words the parties use to describe their relationship. See Kime v. Hobbs, 252 Neb. 407, 562 N.W.2d 705 (1997)[1].
The factors to be considered in determining whether one acting for another is an agent or independent contractor are, among other things, (1) the extent of control which, by the agreement, the employer may exercise over the details of the work, (2) whether the one employed is engaged in a distinct occupation or business, (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision, (4) the skill required in the particular occupation, (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work, (6) the length of time for which the one employed is engaged, (7) the method of payment, whether by the time or by the job, (8) whether the work is a part of the regular business of the employer, (9) whether the parties believe they are creating an agency relationship, and (10) whether the employer is or is not in business.
Equilease Corp. v. Neff Towing Service, Inc., 227 Neb. 523, 526-527,418 N.W.2d 754, 757 (1988) (citing Herman v. Bonanza Bldgs., Inc.,223 Neb. 474, 479-80, 390 N.W.2d 536, 541 (1986)).
The right of control is the chief factor distinguishing an employment relationship from that of an independent contractor. In examining the extent of the employer's control over the worker in this context, it is important to distinguish control over the means and methods of the assignment from control over the end product of the work to be performed. An independent contractor is one who, in the course of an independent occupation or employment, undertakes work subject to the will or control of the person for whom the work is done only as to the result of the work and not as to the methods or means used. Even the employer of an independent contractor may, without changing the status, exercise such control as is necessary to assure performance of the contract in accordance with its terms.
Kime v. Hobbs, 252 Neb. at 414, 562 N.W.2d at 711 (emphasis in original) (citing Pettit v. State, 249 Neb. 666, 544 N.W.2d 855 (1996); Larson v. Hometown Communications, Inc., 248 Neb. 942, 540 N.W.2d 339
(1995)).
The contract between NII and the NSRB contemplates that NII will be an independent contractor. Section 30 of that contract provides "[n]otwithstanding any other provisions contained herein, it is expressly agreed that NII is an independent contractor in the performance of each and every part of this Contract . . . NII may become an agent of NSRB only by the expressed written consent of NSRB." Contract for Network Manager Services Between The Nebraska State Records Board on behalf of the State of Nebraska and Nebraska Interactive, Inc., January 27, 2004, p. 27. However, under Kime v Hobbs, we must examine the relationship between the parties independent of the words they use to define their relationship.
The first factor, the "chief factor" under Kime v. Hobbs, is that of the control of the NSRB over NII. The contract between the NSRB and NII shows that the NSRB has control over the result of the work, but NII is free to use the methods or means it sees fit in order to accomplish the necessary goals. NII controls the day to day operations of Nebraska.gov, and reports to the Board, which meets quarterly. "NII will provide hardware, and provide or develop software as enumerated in the NII proposal (dated 7-31-2003), and such other hardware and software as may be necessary to make the Network operational." Contract for Network Manager Services Between The Nebraska State Records Board on behalf of the State of Nebraska and Nebraska Interactive, Inc., January 27, 2004, at 4. "NII will be responsible during the term of this Contract for maintaining Network hardware and software." Id. at 7. While NII cannot make a "planned material change in Network operations" without the prior written consent of the NSRB, the NSRB exercises no control over how any of these tasks are accomplished, other than providing general guidelines and procedures for project management, such as timelines and reporting procedures. See Id. at 16-17. In addition, NII has the ability to depart from its original proposal when "necessary or desirable," provided any "material" departure is preceded only by notification to the NSRB. Id. at 16.
We understand the level of control of the NSRB over NII to be one of oversight, not of day-to-day instruction or management of operations. Thus, under Kime v. Hobbs, the level of control asserted over NII by the NSRB supports NII being an independent contractor, and not an agent.
The remaining factors which can be applied to the relationship between NII and the NSRB also lead to the conclusion that NII is an independent contractor, and not an agent, of the NSRB.
NII is engaged in a "distinct occupation or business," that of network manager, which is an "independent business enterprise" from that of the State of Nebraska or the NSRB. NII operates its own offices and the necessary equipment to maintain Nebraska.gov, manages its own payroll, controls its own management, and hires and fires its own employees. See Contract for Network Manager Services Between The Nebraska State Records Board on behalf of the State of Nebraska and Nebraska Interactive, Inc., January 27, 2004, p. 18; Request for Proposal issued by The State of Nebraska Department of Administrative Services on behalf of the Nebraska State Records Board, April 14, 2003, Section I "Contractor Personnel." In addition, NII may subcontract its work with written consent from the NSRB, and may use the services of personnel from its parent company without first obtaining consent. This "ability of a worker to `substitute the services of another for his own is indicative of the status of independent contractor.'" Omaha World-Herald v. Dernier,253 Neb. 215, 226, 570 N.W.2d 508, 515 (1997) (quoting Stephens v. Celeryvale Transport, Inc., 205 Neb. 12, 20, 286 N.W.2d 420, 425
(1979)).
The type of occupation, and whether the work is usually done under the direction of the employer or by a specialist without supervision is the next factor. However, our office does not have sufficient information to analyze the contract between NII and the NSRB under this element, as we do not have any information as to how this type of work is typically performed locally.
As to the skill required in the particular occupation, "the less skill required by a job, the greater the indication that the worker is an employee and not an independent contractor." Pettit v. State,249 Neb. 666, 675, 544 N.W.2d 855, 862 (1996) (citing Larson v. Hometown Communications, Inc., 248 Neb. 942, 540 N.W.2d 339 (1995)). Through the information provided to us by your office and the Secretary of State, it is our understanding that performing the duties of a network manager requires highly specialized skills.
Next, as evidenced by the contract provisions previously referenced, NII supplies its own software, hardware, and offices in order to carry out its duties as network manager. Thus, as the contractor supplies the "instrumentalities, tools, and the place of work for the person doing the work," this factor supports the relationship of NII to the NSRB as one of independent contractor. See Equilease Corp. v. Neff Towing Service, Inc., 227 Neb. 523, 526-527, 418 N.W.2d 754, 757; Contract for Network Manager Services Between The Nebraska State Records Board on behalf of the State of Nebraska and Nebraska Interactive, Inc., January 27, 2004, at 4, 7, 18; Request for Proposal issued by The State of Nebraska Department of Administrative Services on behalf of the Nebraska State Records Board, April 14, 2003, Section I "Contractor Personnel."
Additionally, as the contract between NII and the NSRB is limited to a specific term of three years, with possible renewals totaling three additional years, and is for the specific and limited purpose of functions related only to Nebraska.gov, this suggests an independent contractor rather than an agency relationship. See Pettit v. State,249 Neb. 666, 675, 544 N.W.2d 855, 862; Omaha World-Herald v. Dernier,253 Neb. 215, 227, 570 N.W.2d 508, 516.
The next factor to consider is whether payment made to NII is by the time or by the job.
"Normally an employee is compensated while he works. An independent contractor's compensation, on the other hand, usually depends upon whether he makes a profit from the contract." Stephens v. Celeryvale Transport, Inc., 205 Neb. 12, 22, 286 N.W.2d 420, 426 (1979). If such "profitability depends upon the worker's own capital investment, management, and the difference between income and expense, that is an indication of independent contractor status." Id. at 20,286 N.W.2d at 425.
Omaha World-Herald v. Dernier, 253 Neb. at 227, 570 N.W.2d at 516. See Pettit v. State, 249 Neb. at 675, 544 N.W.2d at 862.
NII is not paid by the hour, or on any other payment arrangement related to any amount of time it spends developing or maintaining Nebraska.gov. NII is paid through revenue generated from the gateway; if no revenue is generated, NII is not paid. In addition, NII is solely responsible for its own operating expenses. This supports NII as an independent contractor.
Next is "whether the work is a part of the regular business of the employer." As with the third factor, this is difficult to ascertain. The "regular business" of the NSRB is generally to oversee records retention in the State of Nebraska; this has been expanded to oversee the state's web gateway. The operation of Nebraska.gov through NII may or may not be part of the "regular business" of the NSRB. This leaves us with a second unclear section of the test.
The ninth question is "whether the parties believe they are creating an agency relationship." It is clear from the language in the contract that NII and the NSRB did not intend for an agency relationship, but one of independent contractor. See Contract for Network Manager Services Between The Nebraska State Records Board on behalf of the State of Nebraska and Nebraska Interactive, Inc., January 27, 2004 at 27.
The final matter to consider is whether the NSRB is in business or not. Whether this weighs in favor of the NII being an independent contractor is not clear. The NSRB is a state agency charged with the responsibility of overseeing the creation and maintenance of the state gateway, among other things. However, it may be reasonable to consider providing public records for their distribution through Nebraska.gov, for a fee as provided in the relevant statutes, as a "business." See generally, Pettit v. State, 249 Neb. at 666, 544 N.W.2d at 862; Omaha World-Herald v. Dernier, 253 Neb. at 230, 570 N.W. 2d at 518. As with two other portions of the test, this is unclear.
Even with the result of three of the ten factors unclear, the remainder of evidence is overwhelming, and leads to the reasonable conclusion that NII is an independent contractor of the NSRB, and not an agent.
The Nebraska State Records Board has the authority to expand Nebraska.gov
You have asked "does the NSRB, which has jurisdiction only over operating a portal for electronic access of state records, have the statutory authority to approve the sales of DMV [vehicle registration] renewals over the Internet? Has the NSRB expanded beyond the intent of the Legislature when it enters into the ratification of e-commerce contracts between state agencies and NII?"
It is our conclusion that the jurisdiction of the NSRB is not limited only to electronic access to public records, as you presuppose, and the Board does have the authority to expand the state portal to include other applications, such as DMV vehicle registration renewals. This authority to expand the services provided through Nebraska.gov is granted by Neb. Rev. Stat. § 84-1204, which provides in pertinent part:
 (1) The State Records Board is hereby established. The [B]oard shall:
 * * *
 (b) Provide electronic access to public records through a gateway;
 (c) Develop and maintain a gateway or electronic network for accessing public records; ***
 (g) Explore ways and means of expanding the amount and kind of public records provided through the gateway or electronic network, increasing the utility of the public records provided and the form in which the public records are provided, expanding the base of users who access public records electronically, and, if appropriate, implementing changes necessary for such purposes;
 (h) Explore technological ways and means of improving citizen and business access to public records and, if appropriate, implement the technological improvements;
 (i) Explore options of expanding the gateway or electronic network and its services to citizens and businesses;
 * * *
 (k) Perform other such functions and duties as the [Records Management] act requires.
Neb. Rev. Stat. § 84-1204 (emphasis added).
In Nebraska, in the absence of anything indicating to the contrary, statutory language should be given its plain and ordinary meaning, and when the words of a statute are plain and unambiguous, no interpretation is necessary to ascertain their meaning. Van Ackeren v. Nebraska State Board of Parole, 251 Neb. 477, 558 N.W.2d 48 (1997). Based upon the plain reading, Neb. Rev. Stat. § 84-1204 contemplates that the NSRB may wish to offer additional services, beyond access to public records, through the electronic gateway, Nebraska.gov. This is also generally supported by the legislative history, in which references are made to potentially providing other services and information online, and the recognition by legislators that the internet is ever-changing and the ability to respond to new requests for services is necessary for the NSRB. See generally Floor Debate on LB 590, 95th Neb.Leg., 1st Sess. 4627-4628 (April 21, 1997) (Statement of Sen. Withem).
In addition, when a citizen or a business renews their motor vehicle registration online through Nebraska.gov, the State of Nebraska is collecting public record information through the website, as the NSRB is authorized to do through the Records Management Act, specifically Neb. Rev. Stat. §§ 84-1202, 84-1204 (2008).
For these reasons, we do not believe that the gateway is limited solely to providing access to public records, but may be expanded to offer other services, including those which the DMV has proposed to offer here, the renewal of motor vehicle licenses.
We note that offering public records, or any other services through the expansion of the gateway, must be implemented in compliance with all other applicable statutes. Our review of the contracts provided regarding the payment of vehicle registrations also shows compliance with the DMV statutes regarding vehicle registration renewals.
Nebraska Interactive, Inc. is not subject to Neb. Rev. Stat. § 81-118.01
You next ask "if [Visa] Operating Regulations 5.2.E prohibits the State of Nebraska, its agencies, or officers from a percentage-based convenience fee for credit card charges and prevents us from avoiding the prohibition by using a third party, such as NII, and Neb. Rev. Stat. § 81-118.01(6) requires us to follow the Operating Regulations of credit card providers, do you agree the NSRB cannot contract with NII to avoid violating 5.2.E, and that the NSRB cannot ignore NII's business model if it violates statute?"
First, we believe your question assumes that NII is subject to the provisions of Neb. Rev. Stat. § 81-118.01, which we cannot presume. Thus, the application of Neb. Rev. Stat. § 81-118.01 to NII, an independent contractor, is the primary focus of our analysis with respect to this question. Based on that analysis, as more further explained herein, we do not agree that NII is bound by Neb. Rev. Stat. § 81-118.01, and by extension, the Visa Operating Regulations that bind the state through application of Neb. Rev. Stat. § 81-118.01, including 5.2.E.
State agencies are authorized by Neb. Rev. Stat. § 81-118.01 to accept credit cards as payment for various charges, including licenses and fees.
(1) Any state official or state agency may accept credit cards, charge cards, or debit cards, whether presented in person or electronically, or electronic funds transfers as a method of cash payment of any tax, levy, excise, duty, custom, toll, interest, penalty, fine, license, fee, or assessment of whatever kind or nature, whether general or special, as provided by section 77-1702. ***
(4) The state official or state agency shall obtain, for each transaction, authorization for use of any credit card, charge card, or debit card used pursuant to this section from the financial institution, vending service company, credit card or charge card company, or third-party merchant bank providing such service.
(5) The types of credit cards, charge cards, or debit cards accepted and the payment services provided for any state official or state agency shall be determined by the State Treasurer and the Director of Administrative Services with the advice of the committee convened pursuant to subsection (5) of section 13-609. The State Treasurer and the director shall contract with one or more credit card, charge card, or debit card companies or third-party merchant banks for services on behalf of the state and those counties, cities, and political subdivisions that choose to participate in the state contract for such services. Any negotiated discount, processing, or transaction fee imposed by a credit card, charge card, or debit card company or third-party merchant bank shall be considered, for purposes of this section, as an administrative expense.
(6) A state official or state agency obtaining, for each transaction, authorization for use of any credit card or charge card used pursuant to this section may, but is not required to, impose a surcharge or convenience fee upon the person making a payment by credit card or charge card so as to wholly or partially offset the amount of any discount or administrative fees charged to the state agency, but the surcharge or convenience fee shall not exceed the surcharge or convenience fee imposed by the credit card or charge card companies or third-party merchant banks which have contracted under subsection (5) of this section. The surcharge or convenience fee shall be applied only when allowed by the operating rules and regulations of the credit card or charge card involved or when authorized in writing by the credit card or charge card company involved. When a person elects to make a payment to a state agency by credit card or charge card and such a surcharge or convenience fee is imposed, the payment of such surcharge or convenience fee shall be deemed voluntary by such person and shall be in no case refundable. If a payment is made electronically by credit card, charge card, debit card, or electronic funds transfer as part of a system for providing or retrieving information electronically, the state official or state agency shall be authorized but not required to impose an additional surcharge or convenience fee upon the person making a payment.
Neb. Rev. Stat. § 81-118.01 (emphasis added).
The State of Nebraska contracts with First National Bank of Omaha to provide credit card services under Neb. Rev. Stat. § 81-118.01(5). Pursuant to Neb. Rev. Stat. § 81-118.01(6), the credit card operating rules control whether a state agency may impose a convenience fee or surcharge for the use of a credit card through Nebraska.gov in order to recover any costs incurred by the agency from the credit card company. The Visa Operating Regulations regulate the imposition of a "convenience fee," and require that fee to be flat or fixed, rather than a percentage-based fee[2].
However, nowhere in the Visa Operating Regulations is a workable definition of "convenience fee" provided. The only definition is that a convenience fee is "a fee charged by a Merchant or a Tax Payment Program Merchant to the Cardholder, as specified in Section 5.2.E." This is a circular definition that does not provide any insight into what a "convenience fee" is actually considered to be. Based on this definition, we cannot possibly know if the "convenience fee" referenced by the Visa Operating Regulations is exactly the same as the "portal fee" being charged by NII.
The "portal fee" is charged when a user processes their vehicle registration over Nebraska.gov, regardless of the method of payment. The portal fee has been determined by NII, and from the information we have been provided, the fee is currently set at 3% of the transaction cost. Thus, if vehicle registration fees totaled $500, the portal fee charged to the user would be $15. We believe that the "portal fee" is not the same as the "convenience fee" being referenced by the Visa Regulations, as it is not a fee for the convenience of using a credit card as the method of payment. The "portal fee" is a fee for the convenience of the online transaction, charged across the board, regardless of how the user chooses to pay. It is a cost associated with doing business online, not tied only to using one's credit card.
Additionally, reading the plain language of Neb. Rev. Stat. § 81-118.01(6) makes it clear that this section of the statute regarding convenience fees applies only to charges made by credit card. The Visa regulations also apply to those doing business by credit card. The statute, and corresponding Visa regulations, do not apply to other methods of payment, such as payment made directly out of a checking account, or made by cash or check following an invoice. Thus, we do not believe that Neb. Rev. Stat. § 81-118.01 even applies to "portal fee" at issue herein.
As we have already discussed, above, NII is an independent contractor. It is our understanding that the DMV has contracted with the NSRB, which in turn contracts with NII, to provide the services relating to renewal of vehicle registration through Nebraska.gov. Based on the contracts provided, those users who access Nebraska.gov to renew their vehicle registrations, or access any public records, are accessing that site through NII. Nebraska.gov is a business venture of NII, not of the State of Nebraska. When a user inputs their vehicle information to renew their registration, and provides their payment information, that information is transmitted to NII, and not directly to DMV or the NSRB. NII, not DMV, processes the financial information provided and charges the user's credit card, or processes the other methods of payment permitted through Nebraska.gov. NII is the "merchant" in these transactions, not DMV or the NSRB, and the service NII is providing is the ability to access and complete one's vehicle registration online. NII has earned the right to provide this service based on its contract with the NSRB.
The State's contract with First National Bank of Omaha, and the language of Neb. Rev. Stat. § 81-118.01(4), (6), contemplate that the State is the "merchant" or the entity which will seek to authorize a transaction, and First National Bank of Omaha would process the credit card transaction. However, DMV does not process the transaction, and it does not go through First National Bank of Omaha for processing. Since the state is not seeking the authorization for transactions, we do not believe Neb. Rev. Stat. § 81-118.01 applies to situations in which NII is processing the transaction. Thus, the State's contract with First National Bank of Omaha is also not relevant to the discussion of the "portal fee." We also do not believe the State's contract with First National Bank of Omaha applies to transactions in which NII is the merchant, as NII has their own banking relationship with a bank other than First National Bank of Omaha. That bank processes the financial transactions. The money is then disbursed pursuant to the contract terms (to the State Treasurer, or to the County, depending on statutory requirements), and the registration information is transmitted to DMV for processing.
In addition, our reading of the applicable contracts shows that this portal fee is charged by NII, and ultimately the majority is retained by NII. NII has agreed to absorb the costs for all banking fees associated with processing online payments, including credit card and electronic transfers, on Nebraska.gov related to vehicle registrations, and in turn, retains 90% of the portal fee to cover those costs. The remaining 10% of the portal fee is paid to the NSRB as per its contract with NII. At no time is the portal fee, or any portion thereof, paid to DMV.
However, if Neb. Rev. Stat. § 81-118.01 did apply, compliance with Neb. Rev. Stat. § 81-118.01 may also be required of an independent contractor, such as NII. "A governmental entity may not accomplish indirectly what it is prohibited from doing directly, whether prohibited by constitutional or statutory provisions." Myers v. Nebraska Investment Council, 272 Neb. 669, 682, 724 N.W.2d 776, 792 (2006). Thus, if DMV and/or the NSRB are not authorized to charge percentage-based fees on their own, they may not use the contract with NII to charge "convenience fees" if prohibited by the Visa Operating Regulations, and if those fees will be remitted back to DMV or the NSRB.
We believe Myers in not applicable in this scenario. DMV is not attempting to use NII to circumvent Neb. Rev. Stat. § 81-118.01(6), by authorizing NII to charge a "convenience fee" prohibited by the credit card regulations, and then have that fee remitted back to DMV. Here, NII is absorbing the costs associated with credit card transactions, charging a portal fee, and retaining the majority of that fee. This situation is distinguishable from Myers in that it is not DMV charging the fee, and having the fee returned to DMV through a third party. DMV never sees the portal fee.
In sum, the provisions of Neb. Rev. Stat. § 81-118.01 pertaining to "convenience fees" do not apply to the "portal fees" which are imposed by NII because the latter fees are assessed for use of the internet and also because those fees apply whether charges are paid by credit card or by other means. In addition, Neb. Rev. Stat. § 81-118.01 does not apply to the NII portal fees because NII is the "merchant" which authorizes the online transactions. And, for those same reasons, the State's contract with First National Bank of Omaha, including the applicable Visa Regulations, is not relevant to the imposition of portal fees. Finally, even if Neb. Rev. Stat. § 81-118.01 did apply to the portal fees at issue, that statute would not prevent NII from imposing those fees because NII is an independent contractor. Based upon all those factors, we believe that the current arrangement for portal fees is acceptable and does not violate Neb. Rev. Stat. § 81-118.01.
Application of Neb. Rev. Stat. § 84-710
Your final question states "[g]iven the control, close ties, and collection of State fees for state agencies by NII for the State of Nebraska, is NII acting as an agent for the State agencies when collecting fees through the state portal? And, if so, should it be complying with the deposit requirements of Neb. Rev. Stat. § 84-710?"
We have already addressed the first portion of this question, above, in our analysis of whether NII is an independent contractor, and have concluded that NII is not an agent of the state, but is an independent contractor of the NSRB.
With respect to the second portion of your question, Neb. Rev. Stat. § 84-710 provides:
 It shall be unlawful for any executive department, state institution, board, or officer acting under or by virtue of any statute or authority of the state, including the State Racing Commission, to receive any fees, proceeds from the sale of any public property, or any money belonging to the state or due for any service rendered by virtue of state authority without paying the same into the state treasury within three business days of the receipt thereof when the aggregate amount is five hundred dollars or more and within seven days of the receipt thereof when the aggregate amount is less than five hundred dollars. The State Treasurer may, upon a written request from an executive department, state institution, board, or officer stating that the applicable time period cannot be met, grant additional time to remit the funds to the state treasury. Funds received by an executive department, state institution, board, or officer for a good or service which may or may not be delivered contingent upon a selection process shall not be subject to this section until the selection period is over.
Neb. Rev. Stat. § 84-710 (emphasis added).
Because we have concluded that NII is an independent contractor, and we do not believe the NSRB is using its contract with NII to circumvent the requirements of Neb. Rev. Stat. § 84-710, Myers is again inapplicable. Thus, we do not believe that NII is subject to the requirements of Neb. Rev. Stat. § 84-710.
Notwithstanding this, we understand that on November 17, 2008 your office granted a waiver to NII, and by extension, to the NSRB, pursuant to your authority in Neb. Rev. Stat. § 84-710, and has allowed NII to pay money over to the state treasury in accordance with the contract between NII and the NSRB, rather than in strict conformity with Neb. Rev. Stat. § 84-710. The primary contract makes specific provisions for the deposit of money collected by NII for services it provides through Nebraska.gov, with deposits made on both the 15th and the last day of the month. The contracts between the NSRB and the DMV require funds to be disbursed by NII to the appropriate entity, whether it be the county treasurer or the state treasury within three business days, in compliance with Neb. Rev. Stat. § 84-710.
Thus, we do not believe Neb. Rev. Stat. § 84-710 is applicable to NII as in independent contractor. Regardless, you have provided a waiver to NII with respect to the requirements of Neb. Rev. Stat. § 84-710. Therefore, we have no concerns regarding the current arrangement.
Conclusion
It is our conclusion that motor vehicle registration renewals may be offered through Nebraska.gov, NII is not subject to the provision of Neb. Rev. Stat. § 81-118.01 as to whether it may charge a percentage-based "portal fee" for offering this service, and NII is not subject to Neb. Rev. Stat. § 84-710.
This opinion is not intended to address, in any way, the Treasurer's constitutional and statutory authority to manage the State's banking activities.
Sincerely,
 JON BRUNING Attorney General
 Natalee J. Hart Assistant Attorney General
 Approved: ___________________________ Attorney General
[1] We understand that some of the cases we have cited in the analysis of whether NII is an independent contractor may be distinguishing independent contractor from employee, rather than from agent. However, the test is essentially the same. See, Delicious Foods Co., Inc. v. Millard Warehouse, Inc., 244 Neb. 449, 507 N.W.2d 631 (1993); McCurry v. School Dist. Of Valley, 242 Neb. 504, 496 N.W.2d 433 (1993).
[2] Visa Operating Regulation 5.2.E provides:
 5.2.E Convenience Fees
 5.2.E.1 General Requirements
 5.2.E.1.a Except as specified otherwise for Tax Payment Transactions in Section 5.2.E.2, a
Merchant that charges a Convenience Fee must ensure that the fee is:
 • Charged for a bona fide convenience in the form of an alternative payment channel outside the Merchant's customary payment channels
 • Disclosed to the Cardholder as a charge for the alternative payment channel convenience
 • Added only to a non face-to-face Transaction(FN1)
 • A flat or fixed amount, regardless of the value of the payment due
 • Applicable to all forms of payment accepted in the alternative payment channel
 • Disclosed prior to the completion of the Transaction and the Cardholder is given the opportunity to cancel
 • Included as a part of the total amount of the Transaction
 5.2.E.1.b Except as specified in Section 5.2.E.2.a, a Convenience Fee may only be charged by the Merchant that actually provides goods or services to the Cardholder. A Convenience Fee may not be charged by any third-party.
 5.2.E.1.c Except as permited (sic) in Section 5.2.E.2.c, a Convenience Fee must not be added to a Recurring Transaction
 FN1. The requirement for an alternate payment channel means that Mail/Telephone Order and Electronic Commerce Merchants whose payment channels are exclusively non face-to-face may not impose a Convenience Fee.